Estate of Maurice Markson, Mildred S. Markson, Executrix v. Commissioner.
Estate of Markson v. Commissioner
Docket No. 111539.
United States Tax Court
1944 Tax Ct. Memo LEXIS 308; 3 T.C.M. (CCH) 309; T.C.M. (RIA) 44105; March 31, 1944
*308 Herbert B. Ehrmann, Esq., and Samuel Markell, Esq., for the petitioner. William R. Murrin, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of a deficiency in estate tax of $30,201.79. The question presented is whether all or any part of the corpora of certain trusts are properly includible in the gross estate of petitioner's decedent. Findings of Fact The parties have stipulated certain of the facts which we hereby find accordingly. The facts hereinafter recited are from the stipulations or are otherwise found from the record. Petitioner is the executrix of the Estate of Maurice Markson, deceased, who died at Brookline, Massachusetts, November 16, 1938. Markson's will, dated October 15, 1937, was probated in the Probate Court of Cumberland County, Maine. Petitioner filed a Federal estate tax return in the office of the collector of internal revenue at Augusta, Maine, on February 16, 1940. On December 7, 1929, petitioner's decedent created three trusts known respectively as the "Trust for Mildred Shirley Markson," the "Trust for Harriet Florence Markson," and the "Trust for *309 Theodore Abraham Markson." The trusts were created in Massachusetts at a time when decedent was a resident of that State. On December 7, 1929, for many years prior thereto, and thereafter until decedent's death, Mildred Shirley Markson was decedent's wife. On December 7, 1929, the only issue of decedent were his daughter, Harriet Florence Markson, and his son, Theodore Abraham Markson. On that date Harriet was in her twenty-fourth year and unmarried. Shortly thereafter she married, is now living, and has one child, Richard Allen Lee, born to her September 15, 1931. On December 7, 1929, Theodore was in his twenty-sixth year and married. He survived decedent and has never had any children. In the three trust instruments petitioner's decedent was named trustee and he served as such until his death. The indentures provided for successor trustees in case decedent should cease to serve as such. At the time the trusts were created the corpora of the "Mildred Shirley Markson" and the "Harriet Florence Markson" trusts each consisted of 125 shares of Markson Realty Corporation stock and 250 shares of Markson Brothers stock. The corpus of the "Theodore Abraham Markson" trust consisted of *310 124 shares of Markson Realty Corporation stock and 250 shares of Markson Brothers stock. At that time decedent owned 1083 out of a total of 4,000 shares of stock of Markson Brothers. At the time the trusts were created decedent owned 49 percent of the stock of Markson Realty Corporation and his son Theodore owned 1 percent; 50 percent was owned by a Y. D. Markson. After the creation of the trusts 750 of the Markson Brothers shares were held in the trusts and 333 shares by decedent individually. Shortly thereafter all 1,083 shares were sold. Each trust was to receive $50,000 for its 250 shares. The 333 shares owned by decedent individually were sold on the same basis. Payments were to be made over a period of time, but in 1930 the terms were changed extending the installments. The changes made at that time were all determined by decedent, but the terms of the sale of trust stock did not continue to be the same as the terms for the sale of decedent's individual stock. Each trust ultimately received the $50,000 for its 250 shares. By the 1930 agreement interest on the unpaid balance due each trust was to be at the rate of 6 percent. Within two months prior to December 7, 1929, decedent *311 informed his wife and his daughter that he intended to establish trusts for their benefit and he discussed the contemplated trusts with his son. Shortly after December 7, 1929, he informed his wife and daughter and son that he had established trusts for their benefit and had put into each trust the shares set out in the schedules annexed to each trust. In each of the trusts decedent named himself as trustee. Each of the three trust indentures contained the following paragraph: "4. The Trustee, in addition to and not in limitation of all common law and statutory authority, shall have powers with regard to both real and personal property in the Trust Fund and any part thereof, to sell in whole or in part at public or private sale on such terms as he may deem advisable without approval of any court and without liability upon any person dealing with the Trustee to see to the application of any money or other property delivered to them; to exchange property for other property; to improve, maintain and protect any real or other property in the Trust Fund; to invest and reinvest in securities or properties although of a kind or in an amount which ordinarily would not be considered suitable *312 for a trust fund; so long as any of the persons named herein as Trustee or successor Trustees shall be serving as Trustee, to borrow and for that purpose to pledge the trust property in whole or in part; with regard to real estate which may be owned by the Trustee or which the Trustee contemplates purchasing, to acquire such property subject to existing mortgages or purchase money mortgages and to renew or replace such mort gages in his discretion and to lease such prop erty with or without option to purchase; to keep any or all securities or other property in the name of some other person or corporation with a power of attorney for their transfer attached, or in their own names without disclosing their fiduciary capacity; to determine who are the distributees hereunder and the proportions in which they shall take; to make payments of principal or income direct to and to deal otherwise with minors hereunder as though they were of full age; to make distributions or divisions of principal hereunder in property held in trust at values determined by the Trustee; to determine what shall be charged or credited to income or what to principal, notwithstanding any determination by the courts; *313 to delegate to other persons or corporations such powers and duties as the Trustee may deem to be for the best interests of the trust so to delegate; to pay, compromise or contest any claim or other matter directly or indirectly affecting this fund; to decide whether or not to make deductions for depreciation, obsolescence, amortization, or other reserve or waste (and, if so, in what amount); to employ counsel for any of the above or other purposes and to determine whether or not to act upon his advice; and to execute any deeds or other instruments, sealed or unsealed, directly or indirectly necessary or desirable for the carrying out of any of the above or incidental powers." The "Trust for Mildred Shirley Markson" also provided that the trust was held: "1. To pay the net income thereof, quarterly or oftener as my Trustee may deem fit, to my wife MILDRED SHIRLEY MARKSON during her lifetime, and I further authorize my Trustee to pay to her so much of the principal as he may deem necessary or desirable, having in mind my wife's greatest comfort and happiness. This discretion vested in my Trustee shall not be narrowly construed, but shall be liberally interpreted and exercised. Upon *314 the death of my said wife, issue of mine surviving her, my Trustee shall pay over and distribute the principal in his hands, together with the accumulated income, share and share alike to the trusts, established by me this day for the benefit of my children, HARRIET FLORENCE MARKSON and THEODORE ABRAHAM MARKSON respectively, such property so paid over and distributed to merge with and follow the fortunes of the property held by such trusts or distributed upon their respective termination. If, upon the death of my said wife, no issue of mine survives her, then to pay over and distribute such principal, together with accumulated income, to and among such relatives of my wife and/or of my own, and in such amounts, as she may designate by her will. If my wife dies without exercising such power, then my Trustee shall pay over and distribute the principal remaining in his hands, together with accumulated income, to and among such of my wife's relatives and/or my own, in such amounts as he may designate. In the exercise of this power, I have in mind that my wife or my Trustee will, in making distribution, designate such of my wife's relatives and/or my own as she or my Trustee may believe *315 to be most needy and deserving of financial assistance." The "Trust for Harriet Florence Markson" provided that the trust was held: "1. To pay the net income thereof quarterly or oftener, as my Trustee may deem fit, to my daughter HARRIET FLORENCE MARKSON during her lifetime and, upon her death leaving issue, to pay the said net income to or apply for the benefit of her issue share and share alike until her youngest child arrives at the age of twenty one (21) years, upon the happening of which event the principal of the trust fund, together with accumulated income, shall be paid over and distributed among her issue, share and share alike, the issue of any deceased child to take the parent's share by right of representation and not per capita. I further authorize the Trustee, subject to the limitation hereinafter stated, to pay to her, or to apply for the benefit of her children in the event of her death, so much of the principal as in his discretion may be necessary or desirable, having in mind the greatest comfort, education and happiness of my daughter or her child or children. This discretion vested in my Trustee shall not be narrowly construed but shall be liberally interpreted *316 and exercised. In exercising the discretion as to making principal payments to my daughter, my Trustee may consider her desires in regard to travelling and other matters of a purely cultural character, and also her desire or need for capital for her own or her husband's business. Payments to my daughter, however, shall be subject to the limitation that withdrawals from principal shall not reduce the principal remaining on hand below an amount which, in the judgment of the Trustee, will yield an annual net income of five thousand dollars ($5,000); and, in the case of principal payments on account of her child or children, that amounts so expended shall be charged only to the pro rata share of principal held or set apart for such child and no other. In the event that my daughter should die leaving no issue, then the remainder of such principal, together with accumulated income, shall merge with and follow the fortunes of property held by the Trustee under a trust established by me this day for the benefit of my son THEODORE ABRAHAM MARKSON, or distributed by the Trustee on the termination of such trust; but if my said son shall have predeceased my daughter, leaving no issue, then the *317 said principal remaining, together with accumulated income, shall merge with and follow the fortunes of property held or distributed by the Trustee under a trust established by me this day for the benefit of my wife MILDRED SHIRLEY MARKSON." The "Trust for Theodore Abraham Markson" also provided that the trust was held: "1. To pay the net income thereof quarterly or oftner, as the Trustee may deem fit, to my son THEODORE ABRAHAM MARKSON during his lifetime and, upon his death leaving issue, to pay the said net income to or apply for the benefit of his issue share and share alike until his youngest child arrive at the age of twenty one (21) years, upon the happening of which event the principal of the trust fund, together with accumulated income, shall be paid over and distributed among his issue, share and share alike, the issue of any deceased child to take the parent's share by right of representation and not per capita. I further authorize the Trustee, subject to the limitation hereinafter stated, to pay to my said son such sums from principal as my son may request upon making application in writing to the Trustee. In making such application my son need not state the purpose *318 for which such sums may be required, but he shall not withdraw principal sums in such amounts as will decrease the yearly net income from the remainder of the principal below the sum of five thousand dollars ($5,000). Following my son's death, I further authorize the Trustee to pay to or apply for the benefit of his children so much of the principal as in his discretion may be necessary or desirable, having in mind the greatest comfort, education and happiness of my son's children, subject to the limitation, however, that amounts so expended shall be charged only to the pro rata share of principal held or set apart for such child and no other. In the event that my son should die leaving no issue, then the remainder of such principal, together with accumulated income, shall merge with and follow the fortunes of property held by the Trustee under a trust established by me this day for the benefit of my daughter HARRIET FLORENCE MARKSON, or distributed by the Trustee on the termination of such trust; but if my said daughter shall have predeceased by son, leaving no issue, then the said principal remaining, together with accumulated income, shall merge with and follow the fortunes of property *319 held or distributed by the Trustee under a trust established by me this day for the benefit of my wife MILDRED SHIRLEY MARKSON." While the disposition of the trust property was entirely according to the direction of decedent, the powers of the trustee were selected by his attorney whom decedent had told that he desired to create irrevocable trusts of some of his property for the benefit of his wife and children. The attorney who drew the trusts knew at the time that decedent was a man of independent means, apart from the securities which were to go into the proposed trusts. After the trusts were created decedent employed an accountant to set up books of account for the trusts. The accountant did so and kept the accounts in 1930 and 1931. In setting up the books he created separate accounts for each trust in December, 1929, or early January, 1930, and included for each one separate principal and cash accounts and a distribution account. The same accountant at a later period checked the accounts to see whether they had been properly kept and, after decedent's death, made the fiduciary returns for the successor trustees and resumed the function of keeping the books. The books of account *320 for each trust showed that during the entire period between the creation of the trusts and decedent's death all income received on these securities, including interest on the sale price of the Markson Brothers stock, was annually distributed to the beneficiaries. The accounts also showed that at no time was there any distribution of principal or any addition to principal other than new securities obtained through reinvestment. The only dividend paid by the Markson Realty Corporation from the date of the creation of the trusts to decedent's death was a dividend of $41.67 per share in 1938 which the accounts show was distributed to the beneficiaries as income in that year. During decedent's life the principal in the trust for Mildred Shirley Markson never yielded income in excess of four thousand dollars in any year. The same is true of the other two trusts. Mildred, Harriet, and Theodore each received and used for his or her own purposes the entire net income from the respective trusts bearing their name from the time of the creation of the trusts, during the remainder of decedent's life, and to the date of the hearing. The three named persons in each year included in their personal *321 income tax returns the annual income from the trusts in their respective names. None of the money paid to decedent's wife was used for household purposes. During decedent's life the property in each of the three trusts stood in his name as trustee for the respective beneficiaries and separate bank accounts were kept in the name of each trust in which deposits were made by decedent and from which payments were made to Mildred, Harriet, and Theodore, respectively. During the calendar years 1930 to 1938, inclusive, none of the primary beneficiaries received any payments from decedent as trustee, other than the net income payable from the several trusts, except for payments to Theodore of $41.67, $5.60, and $7.50 in December, 1938. Since decedent's death the successor trustees have made payments of income to the same beneficiaries and in the same manner as was formerly done by decedent as trustee. By the terms of decedent's will, after provision was made for the payment of his debts and the disposition of his personal belongings, the residue was bequeathed one-third to his wife and two-thirds to his two children, Harriet and Theodore. It was further provided in the will that if his *322 wife had predeceased him, her share was to go equally to the children. In the event that either or both children had predeceased decedent it was provided that his or her surviving issue should take per stirpes, but if none, such portion should pass to the wife. Respondent does not contend that the transfers here in question were made in contemplation of death. Opinion Respondent's unsupported assertion that the rule against perpetuities invalidates the trusts which the decedent created during his lifetime and hence requires their inclusion in his gross estate does not bear scrutiny. The period permitted by the common law rule in force in Massachusetts is a life in being, together with 21 years and the addition of any necessary period of gestation. ; Brattle Square Church v. Grant, 3 Gray (69 Mass.) 142, 152. It was not exceeded by any of the trusts. Termination could not be postponed beyond the twenty-first birthday of the youngest children of decedent's son and daughter, respectively, both of the latter constituting lives in being. We can find no suspension of the power of alienation *323 which would destroy the grant. See Homer v. Shelton, 2 Metc. (Mass.) 194; . The control reserved to decedent as trustee, stated without contradiction to be that customarily granted to trustees in Massachusetts, was not such a power to alter or revoke as to come within Revenue Act of 1926, section 302 (d), as amended, nor as to indicate an intention that the gifts were not to take effect until decedent's death under section 302 (c), on principles similar to those applied in . , affirmed on the opinion below (C.C.A., 2nd Cir.), ; ; . Nor is decedent's retained power to appoint the ultimate beneficiaries among his needy relatives and those of his wife upon default of appointment by his wife and failure of all intermediate takers, including his surviving children *324 and their issue, either a possibility of reverter on the principale of , or a power to alter or revoke existing "at the date of his death," under section 302 (d). As to the trust for decedent's daughter, which permit an invasion of the corpus in decedent's discretion if the trust income is not thereby reduced below a stipulated minimum figure, we are likewise of the opinion that the provisions of section 302 (d) are inapplicable. At the date of decedent's death, as the record shows, the requisite condition precedent had not occurred and decedent was prohibited from diminishing corpus by the failure of the income to reach the required figure. See , affirmed (C.C.A., 10th Cir.), . This is also true of the son's trust, where decedent's discretion was even narrower. As to both, his was at best no more than "a contingent power to alter, amend, or revoke" which does not "cause the inclusion of the trust property in his gross estate *325 under section 302 (d)." ; . A different result, however, is required with respect to the trust for decedent's wife. No such limitation upon decedent's discretion was there provided. Rather, the shares of the remaindermen in the trust corpus could be diminished by decedent as trustee in favor of the life tenant, his wife, to the extent that "he may deem necessary or desirable, having in mind my wife's greatest comfort and happiness." See ; . He even enjoined upon himself "this discretion * * * shall be liberally interpreted and exercised." It would be difficult to say that any measurable bounds could be placed upon the consequent potentiality of alteration. . And even assuming the possibility of a demonstration that the facts *326 existing at the time of decedent's death would not have warranted an exercise of his discretionary power, the burden of proof in this respect was upon petitioner and she has entirely failed to bear it. . No question has been raised as to the size of the interest which is thus required to be included in the gross estate. But even if it should be contended that the value of the wife's life estate is properly deductible from it, there is no evidence of the wife's age and no material in the record from which a valuation for that item could be computed. The consequence is that respondent's determination was erroneous as to the property in the trusts for decedent's son and daughter, but correctly required the inclusion in decedent's estate of the value of the property in the trust for the wife. Decision will be entered under Rule 50.